NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHARLES GIVENS,** <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | Civ. No. 13-cv-5900 (WJM) <br><br> **OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Charles Givens, Jr. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") Benefits. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

I.   **LEGAL STANDARDS**

A.   **The Five-Step Sequential Analysis**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden

1

shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B.   Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II.   BACKGROUND

Plaintiff Charles Givens, Jr. is a fifty-nine year-old male who is currently unemployed. According to Plaintiff's own testimony, he previously worked off and on as a forklift operator. Tr. 13. Plaintiff's last work stint lasted one year. In 2002, Plaintiff worked in a warehouse for Wal-Mart in the shipping and receiving department. *Id.*

Plaintiff was shot by his father at age 14. Tr. 13. Plaintiff had a heroin addiction and has used marijuana. He has gone to rehab and detox programs. *Id.* Plaintiff has been incarcerated up to seven times, and the last incarceration was in 2008 for a parole violation. *Id.* Plaintiff's most severe conviction was in 2007 for drug possession. *Id.*

Plaintiff filed an application for SSI benefits on November 19, 2010. The application alleged that Plaintiff suffered from medical impairments, including chronic obstructive pulmonary disease (COPD), hepatitis C, asthma, bronchitis, and depression. Plaintiff alleged that these medical impairments caused him to have symptoms such as shortness of breath, impaired judgment, and suicidal thoughts. The suicidal thoughts led Plaintiff to attempt suicide three times; his last attempt was in 2010. He has also lost a significant amount of weight in the past few years.

Plaintiff's claim was denied initially and on reconsideration. Administrative Law Judge Richard L. DeSteno affirmed the denial after a hearing on May 3, 2012. A request for review was denied on August 2, 2013. Plaintiff now appeals to the District Court.

### A. Summary of the Record

The record includes medical records and evaluations from treating physicians, psychologists, psychiatrists, and state examiners. It also includes Plaintiff's testimony about his condition and daily activities.

According to Plaintiff's testimony, Plaintiff is able to cook four times per week, clean twice per week, dress himself daily, attend counseling sessions three times per week, and travel to the library via public transportation by himself. Tr. 13, 231.

Plaintiff was treated at St. John's Episcopal Hospital, Rockaway Mental Health Services, Rockland Psychiatric Center, and Nyack Hospital. For weekly counseling sessions, Plaintiff met with Licensed Medical Social Worker ("LMSW") Patricia Bowles. Tr. 323. Plaintiff saw treating psychiatrist Dr. Gurevich monthly. Dr. Gurevich prescribed Plaintiff anti-depression medication. Plaintiff also met with psychologist Dr. Volberg, state psychiatrists Dr. Shliselberg and Dr. Arlene Broska, internist Dr. Maria Grohovski, and internal medicine examiner Dr. Amaju Manyam. Tr. 220-21; 229-48.

Dr. Volberg completed a psychological assessment and stated that Plaintiff appeared underweight, but was able to maintain an active lifestyle. Tr. 334. On that same day, September 27, 2010, Plaintiff underwent a physical examination in which the examiner noted that Plaintiff was experiencing no residual symptoms from COPD, asthma, or hepatitis C. Tr. 225.

Dr. Shliselberg filled out Plaintiff's Mental Residual Functional Capacity Assessment ("MRFC"), a test that is then used to determine whether the claimant is capable of performing past or other work despite a mental impairment. Tr. 245. Dr. Shliselberg also filled out Plaintiff's Psychiatric Review Technique ("PRT"), which lists the claimant's functional limitations based on medical dispositions. Tr. 241. In the PRT, Dr. Shliselberg found that Plaintiff had no restriction on activities of daily living, no difficulties maintaining social functioning, and no difficulties in maintaining concentration, persistence, or pace. Tr. 244.

State internist Dr. Grohovski completed a Treating Physician's Wellness Plan and noted that Plaintiff's diagnosis included asthma, COPD, hepatitis C, and depression. Tr. 220. Dr. Grohovski concluded that Plaintiff's depression was stable and his asthma and COPD were well-controlled on medication, but that he would be unable to work for the following twelve months. Tr. 221.

### B. The ALJ's Decision

After careful consideration, Administrative Law Judge Richard DeSteno made the following findings. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 19, 2010, the date of application. Tr. 12. The

3

ALJ then found that Plaintiff has had medically determinable impairments involving hepatitis C, asthma, chronic obstructive pulmonary disease, and depression. *Id.*

At step two, the ALJ found that Plaintiff does not have an impairment or combination of impairments that has significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the ALJ found that Plaintiff does not have a severe impairment and is not disabled. *Id.* In making this finding, ALJ DeSteno noted, "The record established little more than the fact that the [Plaintiff] has been diagnosed with [the above impairments]. It did not establish that these conditions are severe." Tr. 17.

## III. DISCUSSION

Plaintiff argues that 1) the ALJ erred in determining that his impairment or multiple impairments were not "severe" under step two of the five-step sequential evaluation process, 2) the ALJ applied a standard that was too harsh for a step two evaluation, 3) the ALJ improperly rejected every medical opinion, and 4) some of Plaintiff's individual impairments on their own should have met the standard for a "severe" impairment. The Court disagrees.

### A. Step Two Standard: Whether Impairment or Combined Impairments are "Severe"

At step two, the ALJ determines whether the claimant has any "severe" impairments. Any impairment or combination of impairments is severe if it significantly affects the claimant's ability to do basic work activities. 20 C.F.R. §§404.1520(c), 416.920(c). The Plaintiff has the burden to prove that the impairment is "severe." *McCrea v. Commissioner*, 370 F.3d 357, 360 (3d Cir. 2004).

Plaintiff argues that the threshold to prove a "severe" impairment is low. He quotes *McCrea v. Commissioner*, stating, "step two is to be rarely utilized as a basis for the denial of benefits." 370 F.3d at 361. Plaintiff also cites *Newell v. Commissioner* as precedent that step two is a "*de minimus* screening device to dispose of groundless claims." *Newell v. Commissioner*, 347 F.3d 541, 546 (3d Cir. 2003).

Although the threshold in step two may be low, the standard of review remains the same. "The Commissioner's denial at step two, like one made at any other step in the sequential analysis is to be upheld if supported by substantial evidence." *McCrea*, 370 F.3d at 360. Although the Commissioner's determination to deny a claimant's request at step two should be reviewed with close scrutiny, it still must be affirmed if supported by substantial evidence. *Id.* at 361.

In addition, the factors that caused the Court to remand the case in *Newell* do not exist in the present case. In *Newell*, the ALJ made an incorrect assumption that the

4

applicant's failure to see a doctor meant that the applicant was not in pain and therefore not disabled. *Newell*, 347 F.3d at 547. *Newell* stands for the proposition that the lack of contemporaneous objective medical evidence is not necessarily determinative as to the onset date of an impairment, and that an ALJ errs by requiring such evidence to prove the onset date. *Zaccaria v. Commissioner*, 267 Fed.Appx. 159, 163 (3d Cir. 2008). *Newell* did not absolve the claimant from the burden to establish a severe impairment at step two. *Id.*

Here, there was no incorrect assumption or lack of contemporaneous medical evidence. Plaintiff received medical attention from treating doctors and state examiners, all of who filled out reports for the ALJ to review. The ALJ in this case did not make an incorrect assumption, but rather made a reasoned decision based on those medical reports. *See Jakubowski v. Commissioner*, 215 Fed.Appx. 104 (3d Cir. 2007) (stating that an ALJ's decision on the severity of the impairments is supported by substantial evidence when the ALJ cites to specific medical records in his decision).

No one contends that Plaintiff is not suffering from several different impairments. But, at step two, the Plaintiff has the burden to prove that these impairments have or will limit his ability to perform basic work activities. *McCrea*, 370 F.3d at 360. Substantial evidence in the medical record supports ALJ DeSteno's finding that Plaintiff did not meet the burden of proving that his impairment was "severe." The ALJ cited ample medical support in his conclusion that Plaintiff's impairments did not "significantly affect [Plaintiff]'s ability to do basic work activities."

### B.  Rejection of Medical Opinions

Plaintiff contends that the ALJ improperly rejected every medical opinion. Pl. Br. 9. The relevant factors considered in determining what weight to afford a medical opinion include the length, nature and extent of the treatment relationship (if any), relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization, if any, of the opinion's source. 20 C.F.R. § 416.927(c); Social Security Rulings (SSRs) 06-03p, 2006 WL 2329939, 96-2p, 1996 WL 374188. A treating physician's opinion is due controlling weight only if that opinion is well supported by medically acceptable clinical and laboratory techniques and not inconsistent with substantial evidence of record. 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188. When a treating source's opinion is not afforded controlling weight, the same factors discussed above are considered in determining what weight to afford that opinion. 20 C.F.R. §416.927(c)(2)-(6); SSR 96-2p, 1996 WL 374188.

With respect to Dr. Grohovski's opinion that Plaintiff was unable to work, the ALJ found that the doctor's own treatment records did not support the opinion nor was it consistent with other substantial evidence of record. Pl. Br. 9-10; Tr. 19. *See* 20 C.F.R. 416.927(c)(3)-(4); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (stating that ALJ may reject a treating physician's opinion if there is contradictory medical

evidence). Indeed, in the very same August 18, 2010 report where Dr. Grohovski made this conclusion, she noted that Plaintiff's breathing issues were well-controlled with medication, and his depression was stable. Tr. 19, 220-21.

Furthermore, Dr. Grohovski's opinion that Plaintiff was unable to work is not entitled to any weight, as the determination or decision that a claimant is disabled rests solely with the Commissioner. *See* SSR 96-5p, 1996 WL 374183 ("Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled"); 20 C.F.R. §416.927(d)(1).

The ALJ assigned significant weight to the opinion of consultative examiner, Dr. Manyam, finding it consistent with the substantial evidence of record and supported by the doctor's own findings following a personal examination of Plaintiff. *See* Pl. Br. 10; Tr. 19, 229-33. Dr. Manyam found that Plaintiff had no physical limitations, other than a need to avoid smoke, dust, pollen, and other respiratory irritants due to a history of asthma. Tr. 15, 233. However, as the ALJ noted, Plaintiff testified that he continued to smoke cigarettes until two weeks before the May 3, 2012 hearing. Tr. 32. This is despite the fact that Plaintiff had informed Dr. Manyam that he had quit smoking in September 2011. Tr. 229. As such, the ALJ found that Plaintiff's continued ability and willingness to smoke cigarettes belied Dr. Manyam's recommendation that the Plaintiff avoid respiratory irritants. Tr. 18.

The ALJ also assigned significant weight to the opinion of the psychiatric consultative examiner, Dr. Broska, finding it consistent with the substantial evidence of record and supported by the doctor's own findings upon a personal examination of Plaintiff. *See* Pl. Br. 10; Tr. 19. 234-38. As the ALJ noted, Dr. Broska's findings did not indicate a severe impairment. Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain concentration and attention, maintain a therapeutic schedule, perform complex tasks independently, and his memory was within normal limits. Tr. 16, 237. Indeed, the only functional limitation that Dr. Broska noted was that Plaintiff "*may* not make appropriate decisions [and] *may* have difficulty *at times* relating adequately to others and appropriately dealing with stress." Tr. 237 (emphasis added). Such a qualified statement noting the possibility of certain occasional limitations does not support a finding that Plaintiff has a significant limitation in his ability to do basic work activities.

The ALJ assigned no weight to the "moderate limitations" found by the State agency consultant, Dr. Shliselberg, in the MRFC assessment. *See* Pl. Br. 10; Tr. 19, 246. This determination is in accordance with agency rules and regulations. As the ALJ noted, a State agency MRFC assessment contains information relevant to the RFC determination,

6

which the ALJ undertakes after step three, but before step four of the sequential analysis. *See Smith v. Astrue*, 631 F.3d 632, 636-37 (3d Cir. 2011) (holding that the RFC assessment is set forth in narrative section of mental RFC assessment); *see also* 20 C.F.R. §416.920(e), 416.945(a). As the ALJ decided this matter at step two, there was no need to reference this document.

Additionally, the findings contained in the State agency's MRFC assessment related no severe impairments. Plaintiff's depression was stable; he had no thought disorder; his mood was neutral; his attention, concentration, and memory were intact; his activities of daily living and social skills were intact; and he was able to remember, understand, and carry out tasks. Tr. 19, 247. Moreover, in the PRT, the document which specifically relates to step two and step three findings, Dr. Shliselberg found that Plaintiff has no functional limitations in the broad categories of activities of daily living, social functioning, and concentration, persistence, or pace. Tr. 244.

### C.   Individual Impairments

Plaintiff argues that his weight (130 pounds and 6'2", as measured by Dr. Manyam) constitutes a severe impairment. Pl. Br. 16; Tr. 231. However, Plaintiff fails to point out, nor does the evidence of record show, how this fact significantly limits his physical or mental ability to do basic work activities. As noted by the ALJ, Dr. Manyam specifically found that Plaintiff was not cachectic. Tr. 17. Furthermore, on September 27, 2010, LMSW Volberg noted that Plaintiff "appeared underweight," but was "able to maintain an active lifestyle." Tr. 17, 334. In his brief, Plaintiff asserts that his hepatitis C caused the weight loss. Pl. Br. 16. However, Plaintiff cites to no evidentiary support for this claim, and in his testimony, attributed any weight loss to a diminished appetite stemming from his depression. Tr. 39. Plaintiff also informed Dr. Manyam that his appetite was returning and that he was no longer losing weight. Tr. 230.

Plaintiff further asserts that his hepatitis C is a severe impairment. Pl. Br. 16-17. However, Plaintiff fails to provide evidence that the virus has resulted in any symptoms that limit his ability to perform basic work activities. The hepatitis C virus, without evidence of limitations, is not dispositive. *See Taliaferro v. Commissioner*, 2013 WL 5354242, at *5 (D.N.J. September 24, 2013) (affirming ALJ's decision that hepatitis C, even with slightly increased liver enzyme levels, was not a severe impairment).

Plaintiff also claims that his right atrial abnormality is a severe impairment and cites to EKG results on July 11, 2010 and February 2, 2011 as evidence of the impairment's severity. Pl. Br. 17; Tr. 219, 292. However, he again fails to explain how such evidence translates to a finding that Plaintiff is significantly limited in his physical or mental ability to do basic work activities.

Regarding any allegation that Plaintiff's depression constitutes a severe impairment, *see* Pl. Br. 17, mental health treatment notes from Catholic Charities starting in October

2010 consistently show mental stability. Tr. 17. Plaintiff routinely presented with a euthymic mood and appropriate affect. Tr. 17, 357, 360-68, 370, 373, 374, 379, 382. Furthermore, following his March 4, 2011 appointment with LMSW Bowles, Plaintiff stopped seeking mental health treatment at Catholic Charities. Tr. 17, 354-56.

With respect to Plaintiff's respiratory difficulties, the record establishes that Plaintiff experienced no significant asthma-related complications or hospitalizations *following* his SSI application, even in spite of the fact that he continued to smoke cigarettes. The only relevant piece of evidence is the progress note from a March 1, 2011 follow-up visit to St. John's Episcopal Hospital where Plaintiff complained of coughing and shortness of breath, but denied chest pains. Tr. 17, 277. This report also noted that Plaintiff has never been intubated or used oxygen at home. *Id.* Again, despite leaving the record open for additional documents, Plaintiff submitted no documents evidencing any significant complications or symptoms related to his respiratory difficulties occurring *since* his SSI application.

Plaintiff also told Dr. Manyam that his asthma only acted up "now and then." Tr. 17. An August 3, 2010 treatment note from St. John's Episcopal Hospital stated that Plaintiff's COPD was controlled. Tr. 14, 269. A physical examination on September 27, 2010 merely showed that Plaintiff was experiencing symptoms associated with hay fever, and exhibited no residual symptoms from COPD, asthma, or hepatitis C. Tr. 15, 225.

According to his own statements, Plaintiff is able to cook four times per week, clean twice per week, dress himself daily, attend counseling sessions three times per week, and travel to the library via public transportation by himself. Tr. 231. These statements undermine Plaintiff's contentions by demonstrating that he is able to sustain daily life on his own.

Since the main function of this Court is to ensure that the ALJ's decision was supported by substantial evidence, the analysis can stop here. ALJ DeSteno made a decision based on the evidence that Plaintiff's impairments were not "severe." This Court is not to apply a more stringent standard than that of "substantial evidence," nor is it to become the fact-finder. *McCrea*, 370 F.3d at 360-361. Both the Plaintiff's own statements and the statements from many of the doctors provide this Court with "more than a mere scintilla" of evidence to support the ALJ's decision. *Jones*, 364 F.3d at 503.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: Aug. 4, 2014

9